# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 2, 2001 Session

## STATE OF TENNESSEE V. LARRY ALLEN HICKS

**Appeal By Permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**No. 221717    Hon. Douglas A. Meyer, Judge**

_____

**No. E1999-00957-SC-R11-CV - Filed September 11, 2001**

_____


ANDERSON, E. RILEY, C.J., concurring.


The majority concludes that the drivers' license roadblock in this case was established and operated in violation of this Court's decision in State v. Downey, 945 S.W.2d 102 (Tenn. 1997) and, therefore, violated article I, § 7 of the Tennessee Constitution. Although I agree with the result and much of the majority's analysis under Downey, I write separately to express my view that roadblocks used to seize motorists for the purpose of inspecting drivers' licenses are per se unconstitutional under article I, § 7 of the Tennessee Constitution.

As the majority observes, article I, § 7 of the Tennessee Constitution, like the Fourth Amendment to the United States Constitution, prohibits unreasonable searches and seizures and also imposes limits on searches and seizures in order to prevent arbitrary interference by law enforcement with the privacy and personal liberty of individuals. Id. at 104. In general, a seizure of an individual requires probable cause to believe that the individual has committed a criminal offense. See Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142 (1964). A seizure short of an arrest may be made on lesser grounds than probable cause, but still requires a reasonable suspicion of criminal activity based on articulable facts. See Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

The analysis in Downey emphasized that "a roadblock seizure . . . is a departure from these fundamental constitutional principles" because it "permits officers to stop and question persons whose conduct is ordinary, innocent, and free from suspicion." Downey, 945 S.W.2d at 104. We therefore held that a determination of whether such a roadblock seizure passes constitutional muster under article I, § 7 of the Tennessee Constitution requires careful consideration of (1) the public interest allegedly served by the roadblock, (2) the degree to which the public interest is advanced by

the roadblock, and (3) the severity of the interference with the individual liberty of those subjected to the roadblock.  Id. at 107-08.

In applying this analysis in Downey, it is immediately apparent that we gave great weight to the public interest served by a sobriety roadblock:

> We recognize the State's compelling interest in detecting and deterring motorists who drive while under the influence of alcohol. The drunk driver cuts a wide swath of death, pain, grief, and untold injury across the roads of Tennessee.  The carnage and tragedy is recorded daily in our newspapers and on our television screens. Indeed, the Legislature at nearly every session has strengthened the driving under the influence laws in recognition of the strong public interest in solving the problem.  No one can dispute the tragedy and magnitude of the drunk driving problem or the State's interest in eradicating it.

Id. at 104.  As the majority observes, the obvious and compelling public interest in drunk driving cases is to prevent the imminent danger of death or serious bodily injury posed by motorists who drive while impaired and lack the ability to operate their vehicles in a safe manner.

In addition, despite the weighty and compelling public interest in Downey, we did not simply approve of any and all sobriety roadblocks.  In no case does the public interest alone justify a search or seizure – the ends, in other words, do not justify any and all means.  Instead, as the majority indicates, we held in Downey that the public interest must also be advanced by the roadblock and that the roadblock must be established and operated in accordance with "predetermined operational guidelines and supervisory authority that minimize the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene." Id. at 104.  After carefully considering these factors in Downey, we concluded that although sobriety roadblocks are not per se unconstitutional, the specific roadblock in question was not established and operated in a manner that limited the discretion of individual officers at the scene and thus violated article I, § 7 of the Tennessee Constitution.  Id.

In contrast, application of the Downey analysis yields a different result when applied to roadblocks used to stop motorists for the purpose of checking drivers' licenses.[1]  With regard to the first Downey factor, for example, the State asserts the general argument that drivers' license roadblocks, like sobriety roadblocks, serve the public interest of maintaining highway safety.  The dissent likewise theorizes that such roadblocks serve a "critical interest in protecting its citizens from drivers who are either not qualified to drive or have been forbidden to drive because of a record of

---

[1]    Such a conclusion does not require either an expansion or revision to the Downey analysis. Instead, it is the application of Downey to a completely different set of circumstances that warrants this result.

driving offenses." Neither the State nor the dissent offer or cite to any empirical evidence, anecdotal evidence, or even persuasive argument in support of their assertions.

In my view, there is no basis upon which to reasonably conclude that a motorist who is not in possession of a valid drivers' license necessarily poses an immediate danger of death or serious bodily injury great enough to warrant the suspicionless stop of all drivers at a checkpoint. Indeed, even the possession of a valid drivers' license does not necessarily assure the safety and fitness of any motorist. In Tennessee, for example, motorists who obtain a drivers' license at the age of 16 may never again during their lifetimes be tested or examined to ensure their continued skill and fitness. See Tenn. Code Ann. § 55-50-322 (1998 & Supp. 2000). In short, the present case is easily distinguishable from the sobriety checkpoints at issue in Downey. The State has presented no empirical evidence, anecdotal evidence, or persuasive argument that would demonstrate that the public interest served by drivers' license roadblocks even remotely approaches that served by sobriety roadblocks.

I differ from the majority's analysis to the extent that it asserts the State should have an opportunity to establish a sufficient public interest supporting drivers' license checkpoints in a future case. Although the defendant's motion to suppress did not expressly allege that drivers' license roadblocks are per se unconstitutional, it did broadly allege that the "roadblock was conducted in violation of the 'predetermined operational guidelines,' and in violation of Article I, section 7 of the Tennessee Constitution." The issue has been fully briefed and argued on appeal without objection by the State. Moreover, I would note that the State established its interest in Downey not by introducing empirical evidence in the trial court but by presenting anecdotal evidence and asserting persuasive arguments. Neither were presented in this case.[2]

With regard to the second Downey factor, I seriously question whether drivers' license roadblocks are necessary to advance any alleged public interest. The State's argument, mirrored by the dissent, that such roadblocks are the only means through which to enforce the requirement that a motorist possess a valid drivers' license is flawed in at least two respects. First, as a practical matter, the drivers' license requirement is among the most enforced of laws as its production is compelled from any motorist who is stopped for any and all traffic infractions. Second, and more importantly, the simple assertion that there is no other means through which to enforce a law as effectively as using a roadblock in no way creates a compelling public interest for doing so – the end, in other words, should not and does not justify the means.

Finally, in light of my conclusions with respect to the first two Downey factors, I would further observe that even a drivers' license roadblock that minimized the risk of arbitrary intrusion on individuals and limited the discretion of law enforcement officers at the scene would fail to satisfy article I, § 7. In short, the intrusiveness of any roadblock that neither serves a compelling public interest nor advances that interest is by definition excessive.

---

[2]     I am also of the view that the practical effect of the majority's holding correctly makes the State's interest in drivers' license roadblocks all but impossible to establish and is thus tantamount to a per se holding.

In reaching my conclusions, I stress that our decision in <u>Downey</u> upholding sobriety roadblocks under certain limited circumstances should be interpreted as a very rare and limited departure from constitutional principles that require a seizure to be based on probable cause or reasonable suspicion of criminal activity. In my view, there is no similar compelling public interest that is advanced through the use of roadblocks to seize motorists for the inspection of drivers' licenses. I would therefore hold that drivers' license roadblocks are <u>per</u> <u>se</u> unconstitutional under article I, § 7 of the Tennessee Constitution. In all other respects, I agree with the majority's opinion. I am authorized to state that Justice Birch joins in this separate concurring opinion.

_____
E. RILEY ANDERSON, CHIEF JUSTICE